UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK J. HEBERT | CIVIL ACTION |
| VERSUS | NO. 12-0071 |
| SPECIALIZED ENVIRONMENTAL RESOURCES LLC et al. | SECTION "F" |

ORDER AND REASONS

Before the Court are two motions: (1) ES&H, Inc.'s motion for summary judgment, and (2) Specialized Environmental Resources, LLC's motion for summary judgment. For the reasons that follow, ES&H's motion is GRANTED and Specialized Environmental's motion is DENIED.

Background

This case involves personal injuries that were allegedly sustained while attempting to board a vessel.

In January 2007, ES&H, Inc. and Specialized Environmental Resources, LLC entered into a master service agreement, in which Specialized Environmental agreed to provide vessels and captains to ES&H as needed. Pursuant to the master agreement, ES&H requested a vessel on or about January 25, 2011. Specialized Environmental provided the M/V MICHAEL B and a captain. ES&H chartered the vessel on a day-to-day basis, notifying Specialized Environmental every evening by 6:00 p.m. whether it needed the vessel the following day.

1

On or about January 26, 2011, when the MICHAEL B was moored at a dock owned and operated by A-Port LLC, Mark J. Hebert attempted to board the vessel at the rear, using an ice chest as a step.  The ice chest moved and Mr. Hebert fell and was hurt.  At the time, Mr. Hebert was employed as a heavy machinery operator by Iberia Aggregates and Construction Materials, LLC, and it is disputed whether Mr. Hebert was even authorized to board the vessel.

Mr. Hebert sued ES&H, Specialized Environmental Resources, and A-Port in this Court on January 11, 2012, alleging claims of negligence.[1]  Defendants ES&H and Specialized Environmental now move for summary judgment.

## Legal Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a

---

[1] On January 21, 2013, A-Port moved for summary judgment, asserting that it owed no duty to the plaintiff as the dock owner.  This Court granted A-Port's motion on February 6, 2013, and the plaintiff's claims against A-Port were dismissed.

reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## Discussion

ES&H and Specialized Environmental both contend that summary judgment is appropriate. The Court agrees as to ES&H, but genuine issues of material fact preclude summary judgment for

3

Specialized Environmental.

## I.

### A.

A time charter, such as the one ES&H entered into with vessel owner Specialized Environmental, only entitles the charterer to the use of the vessel for a specified time. <u>Forrester v. Ocean Marine Indem. Co.</u>, 11 F.3d 1213, 1215 (5th Cir. 1993). As a result, the time charterer selects the destination of the vessel, but the vessel owner retains primary possession of the vessel and controls the details of the vessel operation required to reach the selected destination. <u>See</u> <u>id.</u> Therefore, as a matter of Fifth Circuit law, a time charterer is not generally liable for claims of negligence of the crew or for the unseaworthiness of the vessel; however, a time charterer may be liable for its own negligence in its capacity as a time charterer. <u>Id.</u> The Fifth Circuit has articled six principles regarding a time charterer's liability:

> First, . . . a time charterer may be held liable regardless of whether the vessel owes a primary duty or a high standard of care to the injured plaintiff. Second, a time charterer owes a . . . hybrid duty arising from contract and tort, to persons with whom it has no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which it exercises at least partial control. ***[Precedent] establish[es] that the traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment.*** Third,

4

> . . . ***the parties may vary the traditional assignment of control by contract or custom***.  Fourth, . . . ***unless the parties have so varied the traditional allocation of responsibility, a time charterer owes no duty beyond these spheres.***  Fifth, . . . ***a time charterer's traditional sphere of control does not extend to providing a safe means of ingress and egress from the vessel***, absent special circumstances.  Sixth, . . . the fact that a vessel owes a duty to a passenger to provide a safe means of ingress and egress does not mean that an accident arising from this activity cannot also be the fault of the time charterer, ***if the plaintiff can establish that accident resulted in part from a decision,*** such as the timing of the ingress or egress, ***within the time charterer's control spheres.***

Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1520 (5th Cir. 1996) (emphasis added), superceded on other grounds by statute, Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2), as recognized in Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778 (5th Cir. 2009) (en banc).  In sum, a time charterer can be liable for an accident that occurs during ingress or egress if the accident resulted from a decision within the time charterer's control spheres or if the time charterer and vessel owner altered the traditional allocation of responsibility by custom or contract.  ES&H contends, and the Court agrees, that it is not liable as time charterer under either scenario.  The Court addresses each in turn.

*B.*

Plaintiff asserts that ES&H is liable as a time charterer because it owned the ice chest involved in the accident and hired the deckhand who was responsible for placing the ice chest on the

5

MICHAEL B.  In addition, plaintiff alleges that ES&H was aware that passengers regularly boarded the MICHAEL B from the rear using the ice chest as a step.  ES&H's decision to place the ice chest at the rear of the vessel, however, does not fall within a time charterer's control spheres.[2]  The Fifth Circuit has expressly stated that "a time charterer owes no duty beyond these spheres":  choosing the vessel's cargo, route, general mission, and specific time in which the vessel will perform its assignment.  Id.   The facts of Hogden v. Forest Oil Corp. illustrate the principle of when a time charterer's decision falls within the enumerated spheres.  In Hogden, the plaintiff's form of ingress and egress was a swing rope.  Id. at 1516.  When attempting to transfer by swing rope from platform to vessel, the plaintiff injured himself.  Id.  The plaintiff sued, among others, the time charterer of the vessel.  Id.  The Fifth Circuit affirmed the district court's finding that the time charterer was

---

[2] In stating the relevant rule, the plaintiff provides:  "Thus, the fact that a vessel owes a duty to a passenger to provide a safe means of ingress and egress does not mean that an accident arising from this activity cannot also be the fault of the time charterer . . . ."  Notably, the portion of the rule that the plaintiff failed to include, which is reproduced below, is dispositive in this case:
> [T]he fact that a vessel owes a duty to a passenger to provide a safe means of ingress and egress does not mean that an accident arising from this activity cannot also be the fault of the time charterer, ***if the plaintiff can establish that accident resulted in part from a decision,*** such as the timing of the ingress or egress, ***within the time charterer's control spheres.***

Hogden, 87 F.3d at 1520 (emphasis added).

partially liable:

> [T]here is nothing dangerous in the swing rope transfer in the abstract.  What made this transfer dangerous was [the time charterer's] timing; on that particular morning, the seas were seven to nine feet.  The timing of the transfer was in [the time charterer's] control in his capacity [as] time charterer of the [vessel].

Id. at 1521.  The Fifth Circuit has explicitly held that "a time charterer's traditional sphere of control does not extend to providing a safe means of ingress and egress."  Id. at 1520.  As mentioned, the Fifth Circuit has limited a time charterer's control spheres to choosing the vessel's cargo, route, general mission, and specific time in which the vessel will perform its assignment.  See, e.g., id.; Randall v. Chevron, U.S.A., Inc., 13 F.3d 888 (5th Cir. 1994); In re P&E Boat Rentals, Inc., 872 F.2d 642 (5th Cir. 1989); Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc., 830 F.2d 1332 (5th Cir. 1987); Graham v. Milky Way Barge, Inc., 824 F.2d 376 (5th Cir. 1987).  In light of this precedent, ES&H is not liable, because the plaintiff in this case has wholly failed to establish on this record that the accident resulted in part from a decision within a time charterer's control sphere.

### C.

Plaintiff also appears to assert that ES&H is liable because it altered the traditional allocation of responsibility by contract or custom.[3]  Specifically, plaintiff states:

---

[3] The Court is construing this argument from plaintiff's meager six pages (of which two and a half constitute the argument

> It was common practice for passengers to board the M/V MICHAEL B from the rear and use the ES&H ice chest that was placed at the rear of the vessel by the ES&H deckhand as a step. ES&H never provided any instruction or warnings with regard to boarding the M/V MICHAEL B from the rear or using the ice chest as a step during ingress and egress.

For support, the plaintiff relies on his deposition testimony of record in which he stated that on the day of the accident, ten to fifteen people boarded MICHAEL B; half of the people boarded from the front of the vessel, the other half from the rear. Two or three individuals boarded in front of the plaintiff and one person was behind him. Plaintiff also contends that ES&H did not provide any instruction as to how to board the vessel or any warning against using the ice chest as a step.

Again, plaintiff appears to assert that because ES&H knew passengers boarded from the rear, and failed to instruct the passengers not to do so, ES&H altered the traditional allocation of responsibility. The case literature, however, clearly establishes that unless altered by custom or contract, the duty to provide a safe means of ingress and egress lies with the vessel owner. See, e.g., Callahan v. Gulf Logistics, LLC, 456 F. App'x 385 (5th Cir. Dec. 29, 2011) ("[A] time charterer's traditional sphere of control does not extend to providing a safe

---

section) submitted in opposition to summary judgment. Further, instead of reproducing the relevant testimony on which plaintiff relies, he simply refers the Court back to one footnote and asserts that a genuine issue of material fact exists.

8

means of ingress or egress from the vessel."); Forrester, 11 F.3d at 1215 ("Having reaffirmed that a time charterer does not owe a per se duty of safe access to a passenger . . . ."). Here, the allocation of responsibility was not altered by the charter agreement between ES&H and Specialized Environmental because the charter does not contain a provision addressing ES&H and the issue of ingress and egress. The Fifth Circuit requires that "[c]lear express language is [needed] in the time charter to rebut the presumption that the charter parties did not intend to shift the responsibility for negligence of a vessel's crew or unseaworthiness of a vessel to the charterer." Saudi v. S/T Marine Atl., 159 F. Supp. 2d 492, 497 (S.D. Tex. 2000) (citing Kerr-McGee Corp., 830 F.2d at 1343). Further, the fact that half of the people boarded from the back, using an ES&H ice chest as a step, fails to raise a genuine issue of material fact as to whether ES&H altered the traditional allocation of responsibility by custom.[4] See Forrester, 11 F.3d at 1216-17 (holding that the

---

[4] The Court cannot find, nor does the plaintiff provide, any case in which a court held that the traditional allocation of responsibility was altered by "custom"--a concept first expressly articulated by the Fifth Circuit in Hogden. The absence of such a case post-Hogden suggests to the Court that the burden to alter responsibility by custom is a difficult standard to meet.
  Further, the case in Hogden in which the Fifth Circuit relied on to support the proposition that parties may vary the traditional assignment of control is of little help here. 97 F.3d at 1520. In Hogden, the Fifth Circuit cited Brown v. Link Belt Division of FMC Corp., a case involving a charterer who instructed the vessel captain to make a transfer to an oil platform despite the vessel owner's objection that the rough

time charterer's motioning to the passengers to go to the back of the ship, and then giving the passengers safety instructions, did not change the traditional control that is retained by the vessel's crew in a time charter situation); Moore v. Phillips Petroleum Co., 912 F.2d 789, 792 (5th Cir. 1990) ("We have never held that a time charterer owes a passenger a duty to take precautions to avoid potentially hazardous means of ingress and egress when the vessel owner, the passenger's employer, or another party controlled the means of ingress and egress."); Smetana v. Apache Corp., No. 10-349, 2011 WL 5855166, at *1, *5-6 (W.D. La. Nov. 21, 2011) (finding that the time charterer was not liable for an accident that occurred when the plaintiff was exiting the vessel by use of a gangway, which an agent of the time charterer had laid across the vessel to the platform).

Accordingly, the Court finds that summary judgment is appropriate in favor of ES&H. In general, time charterers have no duty to provide a safe means of ingress and egress, and

---

weather made the transfer unsafe. 666 F.2d 110, 112 (5th Cir. 1982). The Fifth Circuit concluded that the practice between the charterer and the vessel had given the charterer the primary responsibility for determining whether to transfer passengers. Id. at 113-14. There is no evidence in this case that the time charterer (ES&H) objected to the means of ingress and egress provided by the vessel owner (Specialized Environmental). In fact, ES&H contends that the ice chest was on the vessel because the charterer provides drinks to its employees and subcontractors. ES&H never objected to, or instructed Specialized Environmental on, the means of ingress and egress for the MICHAEL B.

plaintiff has failed to raise a genuine issue of material fact as to whether ES&H made a decision within a time charterer's control sphere or whether ES&H altered the traditional allocation of responsibility by contract or custom.

## II.

Regarding Specialized Environmental, the Court finds summary judgment to be improper, for reasons that will be somewhat repetitious.

General maritime law imposes a duty on vessel owners to provide a reasonably safe means of ingress and egress to its passengers. See, e.g., Forrester, 11 F.3d at 1216; Tittle v. Aldacosta, 544 F.2d 752, 755 (5th Cir. 1977); see also Ross v. John E. Graham & Sons, 189 F.3d 466 (5th Cir. 1999) ("A vessel owner must provide a passenger with a reasonably safe means of boarding or disembarking, including the provision of proper gangways, landing places, and personnel assistance."); Smetana v. Apache Corp., No. 10-349, 2011 WL 5855121, at *4 (W.D. La. Nov. 21, 2011) ("More specifically, vessel owners must provide passengers with a reasonable safe means of boarding or leaving the vessel . . . ."). A vessel owner, however, is not an absolute insurer of passenger safety; a passenger must also exercise reasonable care. Lavergne v. Chevron U.S.A., Inc., 782 F. Supp. 1163, 1168 (W.D. La. 1991).

As a threshold matter, Specialized Environmental asserts in

merely one sentence that it does not owe a duty to the plaintiff because he was not authorized to be on the vessel; however, it fails to provide any relevant case law to support this point or to explain how this would affect plaintiff's status as a passenger.  Instead, Specialized Environmental contends that it fulfilled its duty to provide a reasonably safe means of ingress and egress.  Specifically, Specialized Environmental points out that the MICHAEL B is an aluminum workboat with a forward-facing cabin that is designed to be entered from the bow at the front of the vessel.  When boarded properly, a person steps from the dock onto the raised bow deck and then enters the cabin through the front door, descending a few steps into the cabin area.  Specialized Environmental asserts that the plaintiff improperly boarded the vessel through the rear, even though no one instructed him to do so.  Further, Specialized Environmental submits that plaintiff conceded in his deposition testimony that had he boarded the vessel at the bow, this accident would not have occurred.

While these facts may lend support to a finding of serious comparative fault, the Court cannot conclude, based on the record before it, that Specialized Environmental provided a reasonably safe means of ingress and egress.  A genuine dispute exists as to whether Specialized Environmental made clear that the sole manner of ingress and egress was through the bow at the front of the

vessel; whether Specialized Environmental was aware that passengers regularly boarded using the ice chest at the rear of the vessel; and whether Specialized Environmental had a duty to warn against such rear entry and the use of the ice chest as a step.  As a result, summary judgment is inappropriate as to Specialized Environmental.

    Accordingly, ES&H's motion for summary judgment is GRANTED, and Specialized Environmental's motion for summary judgment is DENIED.

                    New Orleans, Louisiana, March 25, 2013

                        _____
                            MARTIN L. C. FELDMAN
                        UNITED STATES DISTRICT JUDGE