UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK J. HEBERT                                         CIVIL ACTION

VERSUS                                                 NO: 12-0071
                                                       c/w   12-1798

SPECIALIZED ENVIRONMENTAL                              SECTION: "F" (4)
RESOURCES, LLC, ET AL.

ORDER

Before the Court is Defendants, Specialized Environmental Resources, LLC, ("SER") and ES&H, Inc.'s, ("ES&H") (collectively, "Defendants") **Motion for Leave to File Amended Answers and Defenses (R. Doc. 64)**, seeking an Order from the Court permitting them leave to file Amended Answers and Defenses. Plaintiff, Mark Hebert, ("Hebert") has filed an untimely opposition (R. Doc. 64). The motion was heard by oral argument on March, 20, 2013.

I.   **Background**

This is a personal injury maritime case in which Hebert claims injuries arising from an offshore accident. (R. Doc. 1). Specifically, Hebert alleges that he was employed as a heavy machinery operator on the M/V MICHAEL B, a vessel owned and operated by SER on behalf of ES&H. *Id.* at 2. Hebert alleges that on January 26, 2011, while on the job, he "received serious and disabling injuries to his body, including, but not limited to his shoulder and neck" after he slipped on an ice chest

which served as a "stepping platform to board" the MICHAEL B. *Id.* at 2-3.

Hebert alleges that as a result of the accident, he "will no longer be able to engage in his chosen occupation and will suffer a substantial loss of earnings, both past and future." *Id.* Hebert also alleges that he has suffered "extreme physical and mental pain, suffering and disability, and he has sustained a substantial loss of his enjoyment of life." *Id.*

Hebert first brought suit on January 1, 2011. The deadline for submitting pleadings passed on June 29, 2012, and the matter is scheduled for trial on April 15, 2013. (R. Doc. 22). As to the instant motion, Defendants argue that they should be allowed to amend their Answers based on recently discovered evidence that Hebert, in contradiction to his sworn discovery responses and deposition testimony, returned to work in November 2011. (R .Doc. 64, p. 1). Defendants now wish to plead fraud as an affirmative defense. Hebert has not filed an opposition, although he appeared at oral argument.

## II.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." Rule 15(a)(2). This, and other federal rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Leave to amend is by no means automatic, but is within the sound discretion of the trial court.

2

*Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). In exercising its discretion, the trial court must determine that there is a "substantial reason" for the delay. *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 425 (5th Cir. 2004). The Court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

Rule 15(a) must be construed in conjunction with Rule 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4). The Fifth Circuit has held that "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. South Trust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). This necessary examination renders the Rule 15 inquiry "secondary." *Id.* at 536 n.4.

To demonstrate good cause under Rule 16(b), the movant must show that "the deadlines cannot be reasonably met despite the diligence of the party needing the extensions." *Id.* at 535. The court considers four factors: (1) the explanation for the failure to timely move for leave to amend; (2) importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Id.* at 536.[1]

---

[1] Other courts have found that where a plaintiff fails to argue its entitlement to amendment after a pleading deadline under Rule 16(b) but instead argue only under Rule 15(a), a motion for leave should be denied. *See, e.g.*, *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, 2011 WL 13758, at *1-*2 (N.D. Tex. Jan. 4, 2011)

3

### III.     Analysis

#### A.     Hebert's Untimely Opposition

Defendants' motion for leave amend was filed into the record on March 5, 2013, and noticed for submission on March 20, 2013. On March ,14, 2013, the Court set the motion for oral argument. (R. Doc. 65). On March 15, 2013, Hebert filed an opposition to the instant motion. (R. Doc. 66). According to Local Rule 7.5, a party wishing to oppose a motion "must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." *Id.*  Hebert's opposition, which was filed five days before the submission date, is in contravention of the Rule and will not be considered here.

However, the Court notes that because it set Defendants' motion for oral argument on March 14, 2013, it preconceived that Hebert would appear to make arguments in opposition. Indeed, Hebert was present at oral argument and did in fact make arguments against the motion. To the extent Hebert raised specific points of opposition at that time, those arguments can be considered.

#### B.     Merits of Motion

As Defendants' combined proposed amended Answers total 10 pages, they are not duplicated here. *See* (R. Docs. 64-14, 64-15). In sum, as noted above, both Defendants seek to amend their Answers to raise affirmative defenses of fraud based on the conflict between Hebert's many representations during the discovery process, and the materials uncovered by Defendants' private investigator. Defendants also wish to amend portions of their respective Answers to include

---

(discussing defendant's motion to amend to assert affirmative defense of fraud). In this case, Defendants appropriately analyzed both Rule 16(b) and Rule 15(a).

Hebert's fraud as grounds for denial.

### 1. Rule 16(b)

Because the pleading deadline in this case passed in September 2012, the first issue is whether Defendants can demonstrate "good cause" under Rule 16 to modify the Court's Scheduling Order. In support of their motion, Defendants argue that they have recently uncovered evidence that Hebert returned to work managing the Cajun Country Lounge ("Cajun") in November 2011, despite "repeatedly claim[ing] throughout this litigation that he has not returned and cannot return to work." (R. Doc. 64-1, p. 1). Defendants argue that Hebert denied working on several occasions: (1) on January 16, 2012, November 30, 2012, January 11, 2013, January 23, 2013, and February 13, 2013, he told either his own doctors or Defendants' doctors that he could not work. (R. Doc. 64-1, p. 3). (2) on August 15, 2012, he responded to one of SER's Interrogatories by stating that he was unable to work. (R. Doc. 64-3, p. 2). (3) on October 29, 2012, he was deposed, and was asked, "[w]hy aren't you working right now?", to which he responded, "[j]ust the pain level and just can't find anybody that's willing to hire me in my condition." (R. Doc. 64-4, p. 3).

Defendants have also attached postings to Hebert's Facebook page, dated September 14, 2012, which indicate that he was offering drinks at Cajun, and exhorts patrons to "come drink & watch the game with us!!" (R. Doc. 64-11, p. 1). Defendants have also attached photographs of Hebert, dated February 9, 2013, at a location they claim is Cajun, which depict Hebert, *inter alia*, holding a microphone and transporting musical equipment. (R. Doc. 64-12, pp. 2-4).

At oral argument, Defendants reiterated the arguments in their motion. They also argued that Hebert was the "face" of Cajun, as evidenced not only by the postings, but also by photographs

depicting him behind the bar, managing a dance party, working the cash register, and otherwise engaging in activities reasonably construed as "employment." Additionally, Defendants argued that they had obtained a copy of Hebert's "responsible vendor permit" from the Louisiana State Department of Alcohol; according to Defendants, Hebert obtained this license in order to work at Cajun.

In opposition, Hebert admitted, however, that he was responsible for anything posted on his Facebook page. However, Hebert argued that the Facebook postings of third parties were not "admissible," and that he was not specifically "employed" by Cajun, but that he "helped out" on occasion.[2] He stated that he simply "hangs around" Cajun because he has "nothing better to do" in the daytime. He also admitted that during the time he had engaged in these activities, which included drinking alcoholic beverages, he was taking hydrocodone, a narcotic pain medication, for his injuries.

Considering the Rule 16, factors, the Court finds that Defendants have provided an adequate explanation for their failure to timely amend their Answers. Defendants' motion and arguments paints a stark contrast between the statements Hebert made during formal discovery, and the materials uncovered by Defendants' private investigator. This conflict calls into question Hebert's claim that his injuries have prevented him from pursuing employment in his "chosen occupation." Moreover, it was only after Defendants hired a private investigator that they discovered that Hebert's discovery responses were false. (R. Doc. 64-1, p. 5). Defendants were entitled to rely on

---

[2]At oral argument, Defendants referenced an Affidavit produced by one of Cajun's employees, which was purportedly attached to Hebert's Opposition. However, as this Affidavit was not timely filed into the record, it forms no part of the Court's opinion today.

Hebert's responses throughout the course of litigation. In other circumstances where a Defendant submitted sufficient evidence that a plaintiff's conduct had prevented the discovery of material facts, leave to amend was granted. *See, e.g.*, *Mobius Risk Group, LLC v. Global Clean Energy Holdings, Inc.*, 2011 WL 2193294, at *5 (S.D. Tex. June 6, 2011).

At oral argument, the Court noted that even assuming (1) Hebert was not officially "employed" at Cajun, (2) Defendants had failed to ask for the incriminating Facebook statements in discovery, and (3) the Facebook postings of third parties were inadmissible, the ultimate issue in this case was whether Hebert was entitled to damages for lost earning capacity as a result of his inability to *engage* in work; the veracity of this claim was called into question by the findings of Defendants' private investigator, which showed Hebert working the cash register, dancing, and otherwise acting as though he was not in pain.[3]

Moreover, the Court also noted that the parties did not dispute that Hebert consumed alcoholic beverages while at Cajun, during a time when he was taking hydrocodone to manage his pain. Indeed, Defendants argued, and Hebert did not refute, that to the degree Cajun compensated Hebert for his "work," he was *compensated with alcohol.* Hebert offered no explanation at oral argument for why he was consuming both alcohol and hydrocodone contemporaneously. As such, the Court found that there was sufficient evidence to call Hebert's prior discovery conduct into question, which weighed heavily in favor of granting Defendants' motion to amend to assert fraud defenses.

---

[3]For the same reason, the Court finds unpersuasive any distinctions between a position as a heavy machinery operator and as a "helper" at Cajun.

As to the other Rule 16(b) factors, the amendments are clearly important to Defendants' liability in the instant suit. Moreover, there is no "prejudice" to Hebert if the amendment is allowed, as Defendants' submission indicates that Hebert's discovery responses created the circumstance which gave rise to the proposed amendments. Finally, a continuance is likely to cure the defect because the trial date in this case because discovery has already closed in this case, and trial is scheduled for April 15, 2013. The Court notes however that counsel for the plaintiff has not suggested the need for additional time to prepare for trial. On balance, Defendants have demonstrated "good cause" for modification of the scheduling order.[4]

### 2. Rule 15(a)

The Court now turns to the Rule 15(a) factors. As to whether Defendants' delay in seeking the amendment was "undue," the Fifth Circuit has indicated that "[a] litigant's failure to assert as claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant." *Carson v. Polley*, 698 F.2d 562, 584 (5th Cir. 1982) (finding that delay of four months between time pro se attorneys were assigned to case and time second amended complaint was filed did not warrant denial of motion to amend). The Court must look to the "procedural posture" of the case to determine whether the delay actually prejudices the nonmovant. *See id.* at 426-27 ("The delay must be *undue*, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court.") (emphasis in original).

---

[4]Finally, the time interval between the date the first of the investigator's photographs were first taken, on February 9, 2013, and the filing of the instant motion, on March 5, 2013, is not excessive.

8

In this case, the Court finds that the delay in seeking the amendment has not been undue because there is no indication that Defendants knew or should have been aware of the fraud claim prior to soliciting the services of a private investigator, and Defendants were entitled to rely on Hebert's responses to prior discovery. Therefore, this factor weighs heavily in favor of granting the amendment.

As to (2), there has been no "repeated" failure of prior amendments to cure the defect in question, and therefore this factor weighs heavily in favor of granting the proposed amendments. Moreover, as to (3), the Fifth Circuit has cautioned that amendments should not be permitted where they would "fundamentally alter the nature of the case." *In re American International Refinery, Inc.*, 676 F.3d 455, 467 (5th Cir. 2012) (noting that new allegations of fraud in bankruptcy proceeding would have "fundamentally altered" the nature of a case which had previously been limited to determination of whether one party possessed a conflict of interest warranting disgorgement of monies paid); *Mayeaux*, 376 F.3d at 427-28 (finding that complaint would be "fundamentally altered" where proposed amendment would destroy jurisdiction and "effectively reconstruc[ed] the case anew."). Here, the case would not be "fundamentally altered" by the amendment, as Defendants merely seek to add affirmative defenses of fraud as they relate to claims arising from Hebert's Complaint, and therefore this factor also weighs heavily in favor of granting the amendment.

As to (4) the futility of the amendment, the affirmative defense of fraud is not futile. Under Rule 8(c), fraud must be pled as an affirmative defense; moreover, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* In this case

Defendants' affirmative defense of fraud specifically references the conflict between Hebert's allegations and, *inter alia*, his October 29, 2012 deposition testimony and August 15, 2012 discovery responses. *See* (R. Docs. 64-14, pp. 1-2; 64-15, pp. 1-2). Moreover, allegations of fraud survive not only scheduling order deadlines, but an actual judgment in the case. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) (finding that discovery of fraud after judgment warranted relief under Rule 60(b)(3)). In this case, Defendants are not seeking the "extraordinary" remedy of relief from judgment, but merely leave to amend their pleadings under Rule 15(a). Therefore, Defendants' claims are not futile.

At oral argument, the parties did not specifically argue why Rule 15(a) should apply. However, for the reasons listed above, the Court finds that Defendants have satisfied Rule 15(a) and are entitled to amend their Answers as specified in the instant motion.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendants, Specialized Environmental Resources, LLC, ("SLE") and ES&H, Inc.'s, ("ES&H") (collectively, "Defendants") **Motion for Leave to File Amended Answers and Defenses (R. Doc. 64)** is **GRANTED**.

New Orleans, Louisiana, this 27th day of March 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**